SID W. RICHARDSON FOUNDATION,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 27793.

United States Court of Appeals,
Fifth Circuit.

June 23, 1970.

Rehearing Denied Aug. 17, 1970.

Second Rehearing Denied Oct. 23, 1970.

Harry C. Weeks, Frank B. Appleman, Ft. Worth, Tex., for plaintiff-appellant

Eldon B. Mahon, U. S. Atty., Ft. Worth, Tex., John N. Mitchell, Atty. Gen., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Thomas L. Stapleton, Robert I. Waxman, Attys., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before RIVES, GEWIN and INGRAHAM, Circuit Judges.

GEWIN, Circuit Judge:

The Sid W. Richardson Foundation (Foundation) initiated this suit to recover $769,711.48 in income taxes and interest paid by it as transferee of the estate of Sid W. Richardson (Estate) for fiscal years ended September 30, 1960 and September 30, 1961. The sole question presented by the Foundation in its claim for refund, and considered by the district court, was whether the Estate was entitled to deduct from income, as charitable contributions under

§ 642(c) I.R.C. of 1954,[1] amounts representing undistributed income of Richardson Oils (Oils), a Subchapter S Corporation. The district court disallowed the deduction.

On this appeal the Foundation advances two contentions. First, it challenges the district court's decision disallowing the above-mentioned deduction. Second, it argues that the Estate was entitled to a 642(c) charitable deduction equivalent to its total gross income for the years in question. The Foundation's initial contention is without merit and its second contention is not properly before this court. Accordingly, we find no error in the well-reasoned opinion of the district court and affirm.[2]

At the time of his death in 1959, Sid W. Richardson was the sole owner of the capital stock of Oils. All of his stock, except for 160 shares which were redeemed, passed to and remained in the possession and control of the executors as part of the Estate property during the entire period of administration. Oils, with the consent of the Estate, duly elected pursuant to the provisions of § 1372 to be treated as a Subchapter S corporation within the purview of §§ 1371–1377. Thus, Oils did not have to pay any income tax during the period of administration. As Oils' sole shareholder, the Estate included in its gross income the amount of Oils' taxable income whether distributed or not.

Richardson's will (Will) provided that all of the income of the Estate which accrued during its administration would be included in the residue of his estate. The following residuary clause governed the final distribution of this income:

I give, devise and bequeath * * * all of the residue of my estate wherever situated which shall remain after the payment of debts and obliga-tions, taxes and similar charges, the expenses of administering my estate and the satisfaction of the bequests and devises made in Article III hereof, to SID W. RICHARDSON FOUNDATION. * * *

All of the specific bequests in the Will were satisfied in property except for $256,060.36 and a monthly provision for a sister payable out of corpus. None of the Estate's income was used to pay cash bequests. The residue of the Estate, including all outstanding capital stock of Oils and all income was transferred to the Foundation as of January 1, 1962.

Oils had a net taxable income of $492,016.18 for its fiscal year ending October 31, 1959 and $1,229,988.20 for the year ending October 31, 1960. Those amounts were carried on the Estate's books as having accrued to it as part of its gross income, not only for Subchapter S tax purposes, but for all purposes generally attributable to an accrued item. As part of the Estate's gross income, they were included in the 642(c) charitable deductions of the Estate in the fiscal years applicable to them. The amounts of *undistributed* net taxable inome of Oils which were included in the income tax returns of the Estate were $492,016.18 for Estate's fiscal year ended September 30, 1960 and $300,-466.14 for the year ended September 30, 1961. After the residue had been delivered to the Foundation, the IRS examined the Estate's returns and determined that these latter amounts, representing undistributed taxable income of Oils, were improperly included in the charitable deduction because such amounts were never distributed to or received by the Estate and thus were never subject to the provisions of the will. Thus, it concluded that the Estate had a net taxable income of $483,425.90 for 1960 and $299,816.14 for 1961. It is

1. Unless otherwise designated sectional references are to the Internal Revenue Code of 1954.

2. Sid Richardson Foundation v. United States, 306 F.Supp. 755 (N.D.Tex.1969).

Because the facts are not in dispute, we have outlined only certain pertinent facts in this opinion. A full statement of the facts appears in the district court's opinion.

unnecessary to discuss the general method of computation since the Foundation is not entitled to recover if the inclusion of the undistributed taxable income of Oils was properly disallowed. The amount of the income tax deficiency for the first year was determined to be $411,461.55 (plus interest of $87,489.13) and $234,906.92 (plus interest of $35,853.88) for the second year. The total amount of the tax and interest was paid by the Foundation and this suit was instituted to recover the payment.

Section 642(c) provides, in pertinent part:

> In the case of an estate or trust * * there shall be allowed as a deduction in computing its taxable income * * * any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid or permanently set aside for a purpose specified in section 170(c), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. * * *

Thus, to qualify for the charitable deduction, the amount here in question must have been (1) part of the Estate's gross income, and (2) pursuant to the terms of the governing instrument (here the Will) must have been (3) paid or permanently set aside or properly designated to be used exclusively for legitimate charitable purposes.

In considering the Foundation's contentions it is important to understand *in fact* the undistributed income at issue never left the coffers of the Subchapter S corporation. Undaunted by this apparently insurmountable obstacle, the Foundation doggedly insists that the amounts in question have met the requirements of § 642(c) and that the Estate is entitled to the claimed deduction. The Foundation explains that because Oils was a Subchapter S corporation, its undistributed income was a part of the Estate's gross income; and, under the terms of the Will, all of the income of the Estate was set aside for and "actually" did go to the Foundation, a charitable institution. Thus, it concludes that the requirements of § 642(c) have been met and the Estate is entitled to the deduction.

We must reject this conjuration on two grounds. First, the undistributed income of Oils was never subject to the charitable provisions of the Will. Second, the amounts in question were not paid or permanently set aside or otherwise properly designated for charitable purposes.

Although the undistributed income of Oils was considered in computing the gross income of the Estate, it was never a part of the Estate; it never came within the dominion and control of the executors as distinguished from the corporate entity; and it was never subject to the charitable provisions of decedent's Will. The Foundation's argument assumes that because the undistributed income of Oils was included in computing the Estate's gross income, it actually became a part of the Estate and was subject to the terms of the Will. We find no support for such an assumption.

A similar argument was rejected by the Second Circuit in Freund's Estate v. Commissioner of Internal Revenue,[3] where the taxpayer died owning an interest in a law partnership. His will provided that the remainder of his estate should be held in trust, the income to be paid to his surviving sister during her life and the principal, upon her death, to be paid to Harvard College. Under § 126(a) of the 1939 Code, the entire amount of Mr. Freund's share of the 1954 partnership income was includible in the estate's income. Freund's share of partnership income for 1954 was approximately $35,000. However, the Estate actually received only about $12,000, the balance of approximately $23,000 having been withdrawn by

---

3. 303 F.2d 30 (2d Cir. 1962).

Freund prior to his death. The estate, clearly entitled to a $12,000 charitable deduction under § 642(c), claimed an additional $23,000 charitable deduction. In refusing to permit such a deduction, the court stated:

> For accounting purposes Section 126 (a) and its corresponding section in the 1954 code, Section 691(a), employ a fiction in order to transfer the tax burden resulting from "bunching" income in the year of death from the decedent to his estate, while making sure that the amount is taxed to someone.

> From these fictional provisions relating to accounting it does not follow, as appellants contend, that income never received by the decedent's estate, although it must be reported by the estate as gross income, must also be treated as "paid or permanently set aside" for charity under the terms of the decedent's will, and so entitled to the deduction permitted under Section 642 * * *. The will left to charity the residual estate. Plainly, even by the terms of the will, the residuum could not include moneys already expended by the decedent. Yet it is precisely such an impossible construction that the petitioners would have us adopt.[4]

"Precisely such an impossible construction" is urged upon this court by Foundation. The residuary clause of Richardson's Will left the residuum of the Estate to the Foundation. It could have no effect on moneys held by Oils although such amounts were included in computing the Estate's gross income.

The same conclusion was reached in Esposito v. Commissioner of Internal Revenue[5] where decedent devised the residue of his estate to nine charities. The principal asset of his estate was all of the stock in Jarie Corporation, which was considered a personal holding company for tax purposes. Decedent's estate filed a consent to be taxed as if it had received a dividend from Jarie for the taxable year in issue. The estate claimed a charitable deduction under the provisions of § 642(c) for the amount of the consent dividend. The Tax Court properly disallowed such a deduction because the fictional amount included in computing the estate's income was never received by the estate and never paid or permanently set aside for legitimate charitable purposes.

The Foundation attempts to distinguish *Freund* and *Esposito* by arguing that in the instant case, the funds in question were "actually distributed by Oils to the Estate in the two years involved, all of which was under the complete control of the executors, who were required to see, and did see, that it went with the residue of the remainder to Foundation." This argument grossly misstates the facts. It could only be correct if the corporate existence of Oils were totally ignored. The Foundation supports its position by explaining that all of the *stock* of Oils was part of the corpus of the Estate and was duly transferred to the Foundation. In essence, the Foundation is arguing that ownership of the stock is ownership of the income and transfer of the stock is transfer of the income. The Foundation erroneously disregards the fact that Oils is a separate entity, and as such the undistributed profits could be used by Oils in any legitimate way it saw fit. The rule is well-settled that the fact that taxpayers exercised complete dominion and control over the corporation, were in charge of its administration and management, and fully directed its policies, does not justify disregarding the corporate entity for tax purposes.[6] The

---

4. *Id.* at 32.

5. 40 T.C. 459 (1963).

6. National Carbide Corp. v. Commissioner of Internal Revenue, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949); Skarda v. Commissioner of Internal Revenue, 250 F.2d 429 (10th Cir. 1957). One of the more perplexing aspects of this case is that the Foundation never argued that the corporate entity should be disregarded; such an argument would seem to be logically necessary to support its

district court correctly rejected Foundation's claimed deduction for amounts equivalent to the undistributed income of Oils.[7]

■ The Foundation's second ground for recovery, that the Estate is entitled to a charitable deduction equivalent to its gross income, is improperly advanced in this court.[8] We stated in Carmack v. Scofield:

A taxpayer is not permitted to advance one ground for refund in his claim filed with the Commissioner and thereafter rely upon an entirely different ground in a subsequent suit for refund, but is confined to the scope of the grounds for refund asserted in his claim filed with the Commissioner.[9]

Our position was reaffirmed in Alabama By-Products v. Patterson:

All grounds upon which a taxpayer relies must be stated in the original claim for refund so as to apprise the Commissioner of what to look into; the Commissioner can take the claim at its face value and examine only those points to which his attention is necessarily directed. * * * Anything not raised at that time cannot be raised later in a suit for refund.[10]

The Foundation limited its claim for refund to the Subchapter S question with the following language:

While the examining officer admits that the taxpayer is entitled to an un-

limited charitable deduction under Section 641(c) (sic] I.R.C. of 1954, he makes the following statement:

"All income, with the exception of the Subchapter S income from Richardson Oils, Inc., which represents the undistributable taxable income of such corporation, has been allowed as a charitable deduction for the reasons set out in this report."

So, in essence, the deficiencies in income tax proposed against the taxpayer in the examining officer's report . are based upon what he determines to be the undistributed Subchapter S income of Richardson Oils, Inc. included in its tax returns for the respective periods. It appears that the correctness of this action is the *only* issue involved. [Emphasis added]

The Foundation's arguments to the contrary are refuted, in our opinion, by this explicit, unequivocal language.

Affirmed.

## ON PETITION
## FOR REHEARING

PER CURIAM:

In its petition for rehearing the taxpayer calls to our attention the fact that we quoted from a protest letter filed with the District Director of Internal Revenue, but stated that the quotation

---

contention that the amount in question "actually" went to the Foundation. In any event, the above cited authorities seem conclusive on this point.

7. See the district court's opinion, 306 F. Supp. at 761. The court correctly and cogently concluded:

The capital stock of Richardson Oils came within the control of the provisions of the will, but the corporation's undistributed profits did not. Until a dividend was declared, the corporation had the right to use those profits in any legitimate way it saw fit, without regard to the provisions of the will which governed the Estate. Under those circumstances, Sec. 642(c) did not become applicable to such undistributed profits. 306 F.Supp. at 762.

8. If we reached this question, we seriously doubt that the Foundation's argument could be accepted. It insists again on deductions for amounts never received by the Estate and never designated for charitable uses.

9. 201 F.2d 360, 362 (5th Cir. 1953).

10. Alabama By-Products v. Patterson, 258 F.2d 892, 900 (5th Cir. 1968), cert. denied, 358 U.S. 930, 79 S.Ct. 318, 3 L.Ed. 2d 303 (1959). *See* Real Estate—Land Title & Trust Co. v. United States, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542 (1940) ; United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405 (1938).

came from its claim for refund. We now quote from the claim for refund:

Sid W. Richardson Foundation (a Texas nonprofit corporation) is the transferee of the estate of Sid W. Richardson, deceased, and paid the tax and interest shown above. By virtue of Section 642(c), IRC of 1954, and the will of said decedent, said estate was entitled to an unlimited charitable deduction in computing its income tax liability for its fiscal year ended September 30, 1960, in an amount not in excess of its gross income for said period, which gross income exceeded its net income, and owed no income tax for said period. This unlimited charitable deduction was improperly limited in determining the deficiency so illegally assessed against said taxpayer and transferee. See the income return of the Estate of S. W. Richardson, Dec'd., for said period, the report thereon of Internal Revenue Agent Raymond F. Kelly dated 5/16/63, the protest thereto of said Estate dated 7/8/63, and the certified copy of the will of said decedent S. W. Richardson (heretofore filed with the I.R.S.), all of which are incorporated herein by reference.[1]

The quoted language from the claim for refund does not change the conclusion reached in our opinion. The entire record strongly indicates that the theory of the taxpayer's claim for refund was based upon its contention that the undistributed Subchapter S income of Richardson Oils was a part of the estate as distinguished from the corporate entity. Even if the claim for refund is construed as embracing other conten-

tions, such contentions are rejected by the court. We adhere to the conclusion reached that the undistributed income of Oils was never a part of the estate and that the Foundation is not entitled to deduct from income, as charitable contributions under § 642(c) IRC of 1954, amounts representing undistributed income of the Subchapter S corporation.

The petition for rehearing is denied.

---

1. There were two claims for refund, one for the year 1960 and one for the year 1961. It should be noted that the claims for refund incorporate by reference, (a) "the income return" of the Estate of S. W. Richardson, deceased; (b) the report thereon of the Revenue Agent; (c) "the protest thereto of said estate dated 7/8/63", and (d) the certified copy of the will of the decedent.

The language quoted in this court's opinion is from the protest letter, but that letter was part of the claim for refund since it was incorporated therein. The language is considered to be entirely pertinent because it sets forth the underlying basis of the claim and in effect restricts the issue to the Subchapter S income. The same may also be said with respect to the income tax returns and the revenue agent's report which were likewise incorporated by reference in the claims for refund.